UNITED STATES of America

v.

Ronald Lloyd CARROLL et al.

Crim. No. 1261–71.

United States District Court, District of Columbia.

Dec. 22, 1971.

Mark Richards, Asst. U. S. Atty., for the United States.

Edgar Brenner, Thomas J. McGrew, Arnold & Porter, Washington, D. C., for defendants; James C. Lang, Sneed & Waddel, Tulsa, Okl., of counsel.

## MEMORANDUM OPINION AND ORDER

GESELL, District Judge.

Defendants are indicted under Title III of the Omnibus Crime Control and Safe Streets Act of 1968, 18 U.S.C. §§ 2510, et seq.

This title presents a number of thorny interpretive questions. The instant case involves an inconsequential partial overhearing through a connecting hotel room door of a competitor's vulgar salesman and has apparently been chosen by the Department of Justice as a vehicle for resolving some of the latent ambiguities of the statute. In an earlier decision the Court interpreted "wire interception," and the charges of wire interception were dismissed. Memorandum Opinion dated October 15, 1971.* Now both parties press for a further interpretation to resolve the application of the statute to interception of "oral communications" under the facts of this case.

Normally, such determination would await trial. In this instance, however, all pertinent facts have now been stipulated and no purpose is served by going forward with a trial if the Court concludes on this renewed motion to dismiss that the case will have to be taken from the jury as a matter of law at the conclusion of the evidence.

The facts as now developed present quite a simple story. While attending a convention in Washington, D. C., defendant Carroll, an employee of John Roberts, Inc., registered in room M–794 of

* 332 F.Supp. 1299 (D.C.1971).

the Sheraton-Park Hotel without any knowledge of who was in the adjacent room, M–790. In fact, M–790 was being utilized by a business competitor, Herff-Jones Co., as a hospitality suite for the convention. The rooms were connected by a door which was closed and locked but which did not prevent conversations in the hospitality suite from being heard by the unassisted ear in the defendant Carroll's room. During both the morning and the afternoon of April 20, 1971, Carroll recorded conversations emanating from room M–790. At least one conversation recorded was part of a business telephone conversation from the hospitality suite. Carroll made the recordings by using a Channelmaster cassette-type recorder with a standard microphone. This device is an inexpensive model generally available to the public and no more sensitive than the human ear. The text of the recording, which was imperfect, incomplete and full of incoherent jokes, is in the record, as is a photograph of a scale model constructed by the FBI to show the layout and other features of the adjoining rooms.

Carroll and John Roberts, Inc., stand indicted for the interception of oral communications in violation of Title III of the Act. The company and two other individuals were charged with using, disclosing, and endeavoring to use and disclose these intercepted conversations. All defendants are charged with conspiring to intercept, to use and to disclose the oral communications.

■ In order for the interception of an oral communication to constitute an offense under the statute, three elements must be established. First, there must be a willful "interception," defined as the "aural acquisition of the contents of any . . . oral communication through the use of any electronic, mechanical, or other device," 18 U.S.C. § 2510(4). Second, the oral communication must be uttered by a person exhibiting an expectation that such communication is not subject to interception, 18 U.S.C. § 2510(2). And, third, the communication must be "under circumstances justifying such expectation [that the communication is not subject to interception]." *Id.* It is the third element on which the motion to dismiss focuses in this case.

The facts being undisputed, the Court is called upon to specify the factors that must be taken into account in determining whether the circumstances justified an expectation of privacy. Several possible tests for evaluating the circumstances are available.

■■ The first test would be, in effect, whether the speaker reasonably believes that his words cannot be intercepted even though he may be mistaken in this belief. The legislative history, however, is clear that the speaker's "subjective intent . . . is not necessarily the controlling factor." If the subjective intent of the speaker were the determining factor, the criminal liability of the recorder of the conversation would depend upon the subjective belief of the speaker, assuming the speaker had a belief and assuming further that it was not an unreasonable belief. As to this, the recorder would have neither actual knowledge nor, in many cases, any readily available means of knowledge. If this were the test, the guilt or innocence of a defendant might well hinge upon whether another party, the speaker, actually knew that his words spoken at a certain decibel level could be heard through a connecting door or otherwise. This test is too subjective and too arbitrary to serve as a standard upon which to determine the guilt or innocence of a defendant to federal felony charges.

A second test for determining whether the circumstances justified the expectation of privacy would be again a subjective test viewing the matter from the viewpoint of the recorder: Did the recorder consider the circumstances of the conversation as justifying an expectation of privacy on the part of the speaker? This test, however, would involve an analysis by the trier of fact of the recorder's state of mind with respect to whether the speaker believed that the

conversation could be overheard. This "double-think" test, *e. g.*, what the defendant thinks that the speaker is thinking, would present very difficult problems of proof and is also too vague a test to be applied as the decisive factor. It should be noted that the criminal liability of many subsequent users of the tape, who may not have been present at the recording, depends in large part upon whether the initial recording itself was unlawful. Accordingly, it is especially important that the test to be applied to the initial recording be free from vagueness.

The Government recognizes that neither of these subjective tests can be the sole test. Rather, the Government argues, the subjective beliefs of both the speaker and the recorder should be factors to be considered by a jury in an over-all, composite evaluation of the reasonableness of the circumstances under which overhearing took place. This composite evaluation, however, would not avoid the worrisome problems of vagueness and arbitrariness necessarily involved in any reliance on these subjective standards, where the objective standard considered below leaves no room for reasonable doubt.

An objective test would begin by determining whether *in fact* the recorder heard the conversation unaided by any mechanical device. If such be the case, as it is in this instance, then the inquiry turns to whether the overhearing was contrived by the recorder in the sense that he placed his ear by trespass or otherwise, in an unusual or improper position. If, as in the present case, the recorder could and did hear unaided by an amplifying mechanical device and from an uncontrived position, then it would appear that the Court should hold as a matter of law that the circumstances did not justify the expectation of privacy.

Although the legislative history is not conclusive on this point, it does contain indications that Congress did not intend to make recording under these conditions illegal when it passed the Act. The Senate Report, for example, states at one point that, "the person's (speaker's) subjective interest or the place where the communication is uttered is not necessarily the controlling factor." The Report further suggests that the definition of oral communication, which comprehends the requirement that the circumstances justify the expectation of privacy, was intended to reflect the existing constitutional law on right to privacy. At least one case cited in the legislative, State v. Cartwright, 246 Or. 120, 418 P.2d 822 (1966), and numerous subsequent cases seem to have applied to situations involving the right of privacy a *de facto* objective test of whether in fact the conversations could be heard under noncontrived circumstances. United States v. Fuller, 441 F.2d 755 (4th Cir. 1971); Ponce v. Craven, 409 F.2d 621 (9th Cir. 1969); and United States v. Llanes, 398 F.2d 880 (2d Cir. 1968). Also, it appears evident that the factual situation presented in Katz v. United States, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967), was the model of a situation which the Act was designed to prohibit. And in *Katz*, it is apparent that the federal agents were unable to overhear the recorded conversations without a bugging device. In addition, 18 U.S.C. § 2511(2) (c) creates the exception to the statute exempting a "party to the conversation" who simultaneously recorded the communication; and this exception is consistent with the objective approach.

■■ This is a very narrow and unusual case. By stipulation, there is no question of contrivance by the recorder; he did not eavesdrop in a position where an individual would not normally be expected to be. In addition, there is no question of augmentation of the overheard conversation by means of an electronic device more sensitive than the human ear or by a device in an unauthorized place in order to pick up what could not be heard easily by an uncontriving hearer. And, lastly, it is conceded that the individual who did the recording could and did hear the conversation unaided by the mechanical device. If any

of these issues were in doubt, factual questions would be present and, therefore, a trial might be necessary. It is only in the setting where there is no contrivance, no augmentation, and an admitted unaided overhearing that a purely objective test will be decisive. Thus the facts demand as a matter of law that the Court hold there could not be an expectation of privacy under the circumstances of this particular case.

Thus the necessary third element to the crime of intercepting oral communications is missing. Since all the counts of the indictment depend upon the establishment of a private oral communication, all of the counts are defective.

Defendants' motion to dismiss the indictment, therefore, is granted. So ordered.