Jessie WALKER, Plaintiff,

v.

Thomas E. DARBY, Hugh L. Robinson, Jr., and Kenneth Day, Defendants.

CV No. 88–HM–5256–NW.

United States District Court,
N.D. Alabama,
Northwestern Division.

Feb. 10, 1989.

John R. Benn, Slusher & Benn, Florence, Ala., for plaintiff.

Frank W. Donaldson, U.S. Atty., James D. Ingram, Asst. U.S. Atty., Birmingham, Ala., for defendants.

MEMORANDUM OF DECISION

HALTOM, District Judge.

The above entitled civil action was commenced on May 27, 1988 by plaintiff Jessie Walker, a black male letter carrier employed by the United States Postal Service in Florence, Alabama, against defendants Thomas E. Darby, Hugh L. Robinson, Jr. and Kenneth Day [plaintiff's supervisors at the main Florence Post Office] alleging that on or about November 1987 and for a period of several days defendants engaged in unlawful practices at the main Florence postal facility which amounted to illegal eavesdropping of his private worksite conversations with third parties in violation of 18 U.S.C. § 2520[1] and did thereby knowingly or intentionally invade and violate his right to privacy under Alabama law by such illegal practices and is now before the Court upon motion of defendants for summary judgment in their favor with respect to all claims for relief herein asserted by plaintiff against movant defendants.[2]

[STANDARD OF REVIEW]

In ruling on motions for summary judgment this Court must consider all evidence in light most favorable to the non-moving party. *Rollins v. TechSouth*, 833 F.2d 1525, 1528 (11th Cir.1987). But as the Supreme Court noted, this does not lessen the burden of the non-moving party in any way. The non-moving party still bears the burden of coming forward with sufficient evidence of every element that he or she must prove. *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In addition, a court ruling on a summary judgment motion must evaluate

the evidence in light of the proper standard of proof. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). See also *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

Federal Rule of Civil Procedure 56(c) provides that summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." The Supreme Court has mandated that this standard requires summary judgment "against a party who fails to make a showing sufficient to establish the existence of any element essential to that party's case and on which the party will bear the burden of proof at trial." *Celotex*, 477 U.S. 317, 106 S.Ct. 2548. See *Cottle v. Storer Communication, Inc.*, 849 F.2d 570, 575 (11th Cir.1988), for elaboration.

[RELEVANT FACTS OR
ABSENCE THEREOF]

In this summary judgment proceeding plaintiff Jessie Walker has failed to come forward with any factual specifics showing: [1] the contents or nature of his oral communications allegedly intercepted by defendants at the Florence, Alabama Post Office; [2] which defendant or defendants intercepted his oral communications; [3] how, when; [4] or in what manner his oral communications were intercepted; [5] or what evidence exists to show with some degree of specificity that his oral worksite

---

1. 18 U.S.C. § 2520 provides:

    Any person whose wire or oral communication is intercepted, disclosed, or used in violation of this chapter shall (1) have a civil cause of action against any person who intercepts, discloses, or uses, or procures any other person to intercept, disclose, or use such communications, and (2) be entitled to recover from any such person—
      (a) actual damages but not less than liquidated damages computed at the rate of $100 a day for each day of violation of $1,000, whichever is higher;
      (b) punitive damages; and

    (c) a reasonable attorney's fee and other litigation costs reasonably incurred.

2. By Order entered on December 12, 1988 the Court converted defendants' 12(b)(6) motion to dismiss into motion for summary judgment because matters outside the pleading had been presented to and not excluded by the Court. Rule 12(b), Fed.R.Civ.P. All parties waived the 10-day notice provision of Rule 56(c), Fed.R.Civ.P., at the pretrial conference. All parties have been given reasonable opportunity to present all material pertinent to defendants' converted motion by Rule 56.

conversations were in fact *actually* intercepted by defendants. Stretching the submitted evidentiary matter to its outer limits, there is in this summary judgment record *innuendo* that one of the defendants *might* have *sought* at some *unidentified* time in late 1987 to intercept some *unidentified* portion of some *unidentified* worksite oral communication of plaintiff Jessie Walker by some *unidentified* means.[3]

The plaintiff contends that the defendants intercepted a conversation he had with Rodney Hollis, Jr., another letter carrier, near Walker's letter case in late 1987 [Deposition transcript of Jessie Walker, p. 5, line 25 to p. 6, line 9].

Q. I wanted to ask you a few questions concerning the lawsuit that you have filed against the three defendants in this suit. Are you familiar with the complaint that was filed on your behalf by Mr. Benn?

A. Yes.

Q. You read that complaint?

A. Yes.

Q. I'd like for you to be specific for me and state what specific oral communications you are referring to as the basis for this lawsuit.

A. I'm referring to the conversation which I had with Rodney Hollis in which he told me one morning after they had moved upstairs from the annex that in a conversation with Kenny Day—he said that they could stand in Darby's Office—first he told me "Be careful what you say. Your case is bugged." They told him that—

Q. Who told you this?

A. Rodney Hollis, that they could hear —in Gene Darby's office they could "hear everything that nigger says." That they could hear mumbling.

Dep.Tr. of Jessie Walker 9–29–88, p. 5, l. 9 to p. 6, l. 9.

*    *    *    *    *    *

Q. Let me make sure I understand this right. The basis for this complaint is you're saying that the three defendants were eavesdropping to your conversation that you had with Rodney Hollis; is that correct?

A. Yes.

Q. You don't know when that conversation occurred?

A. I don't know the exact date. I don't know if they was eavesdropping on that conversation that Rodney and I had. Rodney only told me about the conversation that he and they had when they told him that my case was bugged.

Q. Isn't it a fact, though, Mr. Walker, that you don't know from your own personal knowledge of any conversations that were bugged?

A. I don't know the conversation. I know that—I only know what he told me, and I believed him.

Q. You don't know, for a fact, firsthand that any of your conversations were bugged, do you?

A. Firsthand, no.

Dep.Tr. of Jessie Walker, p. 17, l. 16 to p. 18, l. 9.

*    *    *    *    *    *

Q. Explain to me, for my own knowledge, how you claim that conversation you had with Rodney Hollis that day, whenever it was, was intercepted?

A. I didn't say it was intercepted.

Q. Yes, you did.

A. I did not. I didn't say it. I said he was talking low as though to keep it from being heard. But I didn't say that we had conversation that was intercepted.

Q. So you don't know of any conversation that was intercepted?

A. No.

Dep.Tr. of Jessie Walker, p. 20, l. 12–23.

*    *    *    *    *    *

**3.** The evidence in the summary judgment record is sufficient for the Court to *speculate* or *guess* that the interception device could possibly have been an office intercom unit located approximately fifteen feet away from the plaintiff's letter case (work area where letter carriers separate and arrange mail prior to beginning their daily rounds).

Q. Well, then, I will stand corrected. Let me rephrase the question, Mr. Walker. On the basis of the troubles that you claim were inflicted upon you in the work space for the last two or three years, plus what Rodney Hollis told you, that serves as a basis for this lawsuit; is that correct?

A. That and a letter that Rodney Hollis wrote.

Q. Doesn't it still boil down to the fact that you're relying on what someone else told you to file this lawsuit; is that correct?

A. On what someone else told me and the troubles that I'd had, yes.

Dep.Tr. of Jessie Walker, p. 19, 1. 15 to p. 20, 1. 1.

Counsel of record for defendants convincingly argues in brief that the conclusion to be reasonably drawn from the deposition testimony of plaintiff Jessie Walker above set out is that plaintiff's lawsuit is based, not on his own knowledge of facts that would give rise to a cause of action against defendants under 18 U.S.C. § 2520 and under state law relating to right of privacy, but rather on hearsay and double hearsay and the fact that he has had trouble with his supervisors at work [Memo. of Law In Support of Defendants' Motion For Summary Judgment, p. 6].

The deposition transcript of Rodney H. Hollis, Jr. tell the hearsay story:

Q. What you told Jessie Walker the next day, that was based solely on what Kenny had told you?

A. Right. But I'm not sure it was the next day. There could've been a few days elapsed there.

Q. But what you told Jessie Walker based solely on what Kenny told You.

A. Absolutely.

Q. And you personally never saw any listening devices or microphones or wires on Jessie Walker's case or work area?

A. No, I did not.

Dep.Tr. of Rodney H. Hollis, Jr., at p. 18, 1. 10–20.

\*    \*    \*    \*    \*    \*

Q. To your knowledge, did Jessie Walker ever uncover or discover any evidence of anyone in the Post Office listening to his conversations?

A. Not as far as I know.

Dep.Tr. of Rodney H. Hollis, Jr., at p. 19, 1. 23 to p. 20, 1. 1.

\*    \*    \*    \*    \*    \*

Q. Mr. Hollis, aside from what you just testified to, based on your own personal relationship with Mr. Day, the statement that you have said Mr. Day made to you regarding, "You ought to see what we put in Darby's office," you don't have any way of knowing, positively, that he was actually telling you the truth on that?

A. No.

Dep.Tr. of Rodney H. Hollis, Jr., at p. 30, 1. 16–22.

In addition plaintiff's counsel also took the depositions of seven Postal Service letter carriers in Florence, all of whom worked with Walker. Much of the deposition testimony of these seven Postal Service employees is based on hearsay, speculation and conjecture; and cross-examination of these deponents by defendants' counsel of record reveals that none of these seven individuals had any first-hand knowledge of the defendants' actually intercepting Jessie Walker's worksite conversations at the main Florence Post Office. See Dep.Tr. of Rodney H. Hollis, Jr., at p. 19, line 20 through line 25; p. 20, line 1; Dep.Tr. of Harold L. Hovater, Sr., at p. 25, line 22 through line 25; p. 16, lines 1 through 4; Dep.Tr. of Rodney A. Nelson, at p. 11, line 5 through 18; Dep.Tr. of Mike Naley, at p. 16, line 17 through line 35 and at p. 17, line 1; p. 17, line 2 through line 25; p. 25, line 1 through 12; Dep.Tr. of Alan Gray, at p. 19, line 2 through line 13; Dep.Tr. of Carter Gamble, at p. 10, line 19 through line 23; and Dep.Tr. of William Thomas Childers, at p. 11, line 21 through line 25; p. 12, line 1 through 11.

The Court has carefully reviewed what counsel of record for plaintiff Jessie Walker represents in brief to be the pertinent portions of depositions taken in this civil action which preclude the Court from

granting defendants' motion for summary judgment. They are as follows:

Dep. of Hollis, p. 9, lines 1–25; p. 10, lines 1–12
[page 3–4 of Brief]

Dep. of Hollis, p. 10, lines 16–25; p. 11, lines 1–21
[pages 4–5 of Brief]

Dep. of Hollis, p. 30, lines 3–13
[page 5 of Brief]

Dep. of Gray, p. 10, lines 18–25; p. 11, lines 1–14
[page 6 of Brief]

Dep. of Hollis, p. 24, lines 5–25; p. 25, lines 1–19
[page 7 of Brief]

Dep. of Nale, p. 5, lines 8–20
[pages 7–8 of Brief]

Dep. of Childers, p. 6, lines 6–19
[page 8 of Brief]

Dep. of Gray, p. 12, lines 13–25; p. 13, lines 1–25
[pages 8–9 of Brief]

Dep. of Gray, p. 14, lines 15–24
[page 9 of Brief]

Dep. of defendant Robinson, p. 14, lines 21–25; p. 15, lines 1–9
[page 10 of Brief]

Dep. of Gray, p. 5, lines 24–25; p. 6, lines 1–13
[pages 10–11 of Brief]

Dep. of Gamble, p. 4, lines 22–25; p. 5, lines 1–4
[page 11 of Brief]

Dep. of Gamble, p. 5, lines 16–25; p. 6, lines 1–12
[pages 11–12 of Brief]

Dep. of Hovater, p. 8, lines 20–25, p. 9, lines 1–25; p. 10, lines 1–3
[page 12 of Brief]

Dep. of Hovater, p. 5, lines 13–25; p. 6, lines 1–20
[pages 12–13 of Brief]

Dep. of Nelson, p. 6, lines 1–15
[page 14 of Brief]

Dep. of Nelson, p. 9, lines 23–25; p. 10, lines 1–2
[page 14 of Brief]

Dep. of Nelson, p. 10, lines 14–16
[page 14 of Brief]

Dep. of Hovater, p. 12, lines 8–25, p. 13, lines 1–9
[pages 14–15 of Brief]

Dep. of Hovater, p. 10, lines 17–25; p. 11, lines 1–25
[pages 15–16 of Brief]

Dep. of Nelson, p. 8, lines 18–25; p. 9, line 1
[page 16 of Brief]

Dep. of Gray, p. 7, lines 10–25; p. 8, lines 1–21
[pages 16–17 of Brief]

Dep. of Hollis, p. 11, line 25; p. 12, lines 1–24
[page 18 of Brief]

Dep. of Nelson, p. 7, lines 2–8
[page 18 of Brief]

Dep. of Nelson, p. 9, lines 13–20
[pages 18–19 of Brief]

Dep. of Childers, p. 7, lines 6–10
[page 19 of Brief]

Dep. of Nale, p. 9, lines 7–9
[page 19 of Brief]

Dep. of Nale, p. 10, lines 12–25; p. 11, lines 1–7
[pages 19–20 of Brief]

Dep. of Nale, p. 14, lines 2–18
[page 20 of Brief]

Dep. of Nale, p. 23, lines 8–25; p. 24, lines 1–2
[page 20 of Brief]

Dep. of Childers, p. 5, lines 14–25; p. 6, lines 1–5
[pages 20–21 of Brief]

Before commencing with a Supreme Court (*Celotex* and progeny) and Eleventh Circuit (*Commuter Transp.* and progeny) mandated evaluation of the evidentiary matter above referenced, it is significant to note at this juncture what plaintiff Walker *has* and *has not* alleged in his complaint against the defendants Darby, Robinson and Day in this case:

In ¶ 1 of the *Jurisdiction* section of the complaint plaintiff alleges:

1. This is a civil action seeking damages, both compensatory and special statutory damages, as a result of the *interpretation* or *disclosure* of Plaintiff's oral communications as prohibit-

ed by the provisions of the Omnibus Crime Control and Safe Street Act of 1968.

In ¶ 2 of the *Jurisdiction* section of Walker's complaint he alleges:

2. Jurisdiction is predicated on 18 U.S.C. § 2520 and 28 U.S.C. Section 1343(4). This action is brought to enforce Plaintiff's rights to be free from the unlawful *interception, disclosure, or use of his oral communications.*

¶¶ 8, 9 and 10 of the *Factual* section of plaintiff's complaint read:

8. That on or about November, 1987, Plaintiff's worksite at his place of employment with the United States Post Office, Main Branch in Florence, Alabama, was made the subject of an amplifying, transmitting, or recording device that was placed there by Defendants Kenneth Day, Hugh L. Robinson, Jr., and Thomas E. Darby.

9. For a period of several days thereafter said Defendants did through the use of illegal means of *amplifying, transmitting or recording of Plaintiff's oral communications* did intercept conversations not otherwise authorized.

10. That as a result of the illegal *amplifying, transmitting or recording* of Plaintiff's *oral conversations* he has been subject to the disclosure of *private conversations* that were otherwise not intended for said Defendants. *At the time of said interception, Plaintiff had pending several discrimination complaints against one or more Defendants for unlawful discrimination.*

¶¶ 12 and 13 of plaintiff's *First Claim* in his complaint allege:

12. That *Defendant* [sic] *engaged in unlawful practices that amounted to illegal eavesdropping* in violation of the aforementioned statutes specifically Section 18 USC Section 2520.

13. That *Plaintiff was the intended target against whom the interception was directed* and is entitled to recover damages under said statute. Plaintiff further contends that he was caused to suffer emotional distress and embarrassment due to the nature of the Defen-

dant's [sic] wrongful conduct. Plaintiff prays for the relief set forth in the conclusion of this complaint.

Plaintiff's *Second Claim* [¶ 14] in his complaint alleges in pertinent part:

14. Under the doctrine of Pendent Jurisdiction Plaintiff states that the *Defendant's* [sic] *did knowingly or intentionally violate Plaintiff's right to privacy by the illegal interception, disclosure, or use of his private conversations with third parties.*

*First,* plaintiff Jessie Walker *has not* alleged a *civil conspiracy* by defendants Darby, Robinson and Day to violate his rights under either 18 U.S.C. § 2520 or under his invasion of right to privacy state law claim. Thus, in analyzing the evidence in this summary judgment record the Court is required to ascertain therefrom whether plaintiff has come forward with specific facts demonstrating a genuine dispute with respect to his federal and/or state law claims for relief against *each defendant.* In other words and by way of example, the facts in this summary judgment record "against" the defendant Darby cannot be marshaled "against" the defendant Robinson or "against" the defendant Day without relevant evidence showing the involvement of defendant Robinson and/or defendant Day in the interception. And the "probata" cannot supply the "allegata" nor vice versa.

*Secondly,* this case deals *only* with alleged "intercepted" oral communications of plaintiff; not an oral communication which was *"disclosed"*; and not an oral communication which was *"used"*.

*Third,* there is not one whit of evidence in this summary judgment record showing or tending to show that *any defendant* intercepted any identified or specific oral communication of plaintiff Jessie Walker.

*Fourth,* there is not a shred of evidence in this summary judgment record showing or tending to show: [1] whether an alleged intercepted oral communication of plaintiff in each alleged instance was a personal or business communication; [2] the subject of the alleged intercepted oral communication;

[3] the party or party to whom the alleged intercepted oral communication was addressed; [4] when [except general year reference] each alleged intercepted oral communication was made by plaintiff; and [5] how an alleged specific intercepted oral communication was intercepted by an identified defendant. In short, the Court cannot in this decision based on this record refer with any degree of specificity to a particular oral communication of plaintiff which a particular defendant or particular defendants allegedly intercepted in violation of 18 U.S.C. § 2520 nor to a specific time when the oral communication of plaintiff was allegedly intercepted nor to an alleged specific manner in which a specific oral communication of plaintiff was allegedly intercepted by a specific defendant. Since the plaintiff here heavily relies on and strongly emphasizes his expectation of privacy at the main U.S. Post Office worksite in Florence with regard to his oral communications to his fellow employees (presumably), it appears reasonable to this Court to require plaintiff to come forward in opposition to defendants' motions for summary judgment with specific facts informing the Court and these defendants of the nature and contents of the oral communications intercepted and how, when and where each of them violated Title III of the Omnibus Crime Control and Safe Street Acts of 1968, 18 U.S.C. §§ 2510–2520 (1976). While a violation of this statute may be established by circumstantial evidence without question, such evidence must in turn establish the essential elements of the civil offense and the identity of the person committing that offense.

### [APPLICABLE STATUTORY LAW]

The provisions of 18 U.S.C. § 2511 makes it a criminal offense willfully to use any electronic, mechanical or other device to intercept an oral communication. 18 U.S.C. § 2510(2) defines *"oral communication"* as *"any oral communication uttered by a person exhibiting an expectation that such communication is not subject to interception under circumstances justifying such expectation."* 18 U.S.C. § 2510(4) defines *"intercept"* as *"... the*

aural or other acquisition of the contents of any wire, electronic, or oral communication through the use of any electronic, mechanical, or other device." 18 U.S.C. § 2510(8) defines "contents" as follows: *"contents"*, when used with respect to any wire, oral or electronic communication, includes any information concerning the substance, purport, or meaning of that communication." 18 U.S.C. § 2520, the federal statute under which the present suit is brought, authorizes recovery of civil damages by the person whose oral communication has been intercepted.

### [DISCUSSION]

### [Invasion of Privacy]

It is difficult to determine from the pleadings and this summary judgment evidentiary record the particular aspect of plaintiff's privacy which is here involved, i.e., whether it is his interest in avoiding disclosure of personal matters, that is, his ability to determine for himself when, how and to what extent information about him is communicated to others, or whether it is his interest in avoiding disclosure of his oral communications to co-employees at the Post Office worksite (business, or personal or mixed). If it is the latter, his expectation of privacy would indeed be substantially diminished inasmuch as plaintiff did his letter case work in the post office in an area in which a number of postal letter carriers were closely located each to the other.

The determination of whether plaintiff Walker had a legitimate expectation of privacy involves two lines of inquiry: *First,* by his conduct, the plaintiff must have exhibited an actual (subjective) expectation of privacy, i.e., he must have shown that he sought to preserve his oral communications to others at his letter case worksite as private. *Second,* it must be decided whether the plaintiff's expectation, viewed objectively, was justifiable under the circumstances. Put another way, his expectation of privacy must have been one that society is prepared to recognize as reasonable. See *Smith v. Maryland,* 442 U.S. 735, 740,

99 S.Ct. 2577, 2580, 61 L.Ed.2d 220 (1979); *United States v. Nadler,* 698 F.2d 995, 999 (9th Cir.1983); *United States v. Fisch,* 474 F.2d 1071, 1076–77 (9th Cir.1973).

The subjective expectation of privacy may be tested by any outward manifestation by the plaintiff Jessie Walker that he expected his oral communications at his letter case postal worksite to his fellow postal employees [or possibly although not probably to third party visitors to or customers of the Post Office] to be free from eavesdroppers. A comparison of what precautions he took to safeguard his privacy interest, if any he did take in fact, with the precautions he might reasonably have taken could well be appropriate if the facts surrounding the alleged interceptions had been better developed and presented to the court by the non-movant. See *Dow Chemical Co. v. United States,* 749 F.2d 307, 312 (6th Cir.1984). But the Court finds a barren record on this issue.

Counsel of record for defendants rely on *Broadway v. City of Montgomery, Alabama,* 530 F.2d 657 (5th Cir.1976), in support of defendant's motion for summary judgment, representing that the former Fifth Circuit there addressed a fact situation similar to the facts of the present case.

In *Broadway* an action was brought against the city and two of its police officers (Don R. Terry and James Lisenby) seeking damages and injunctive relief based on an alleged illegal wiretap of one of plaintiff's telephones and interception of certain oral communication between plaintiff Broadway and other plaintiffs. In addition the complaint alleged negligence of the city in failing to properly train its police officials. The district court rendered summary judgment for defendants and plaintiffs appealed. The Court of Appeals held that the remaining plaintiffs [plaintiff Broadway being then a fugitive from justice] were not entitled to recover under 18 U.S.C. § 2520 authorizing civil actions to recover damages for an illegal wiretap *absent any showing in the summary judgment procedure that the challenged wiretap in fact took place, much less that the fruits thereof were used or disclosed.* The

following language from the *Broadway* reported decision, in the opinion of this Court, furnishes strong support for the summary judgment position of no liability taken by the defendant postal supervisors in the instant case:

In order to prevail under 18 U.S.C. § 2520 the remaining appellants must show that the oral communications were in fact intercepted, disclosed or used by defendants. [footnote omitted] The district judge observed that "There is no evidence that any communication was disclosed or used by any defendant in this case." He considered it unnecessary to decide the question of interception and based his judgment on the substantial evidence of defendants' innocence and the failure of plaintiffs to submit any admissible evidence to the contrary. [footnote omitted] Our review of the record corroborates the finding of the district judge in respect to nondisclosure and nonuse of any communication by defendants, and further supplies the answer to the question of interception. Terry emphatically denied that he ever listened to the tape, and although Lisenby was not questioned in respect to interception, his uncontroverted testimony of lack of knowledge of the existence of the wiretap prior to its discovery precludes any reasonable inference of interception.

. . . .

Depositions of appellants Levis Broadway, James Broadway and McGraw conclusively and affirmatively show that they had no factual knowledge to substantiate the charge that defendants heard or listened to the tape. [footnote omitted] The only suggestion of interception by defendants came from the affidavit of appellant Segall submitted in opposition to the motion for summary judgment. The affidavit constitutes nothing more than a recital of unsupported allegations, conclusory in nature. [footnote omitted] As such it is insufficient to avoid summary judgment. [citations omitted]. Plaintiffs have failed to negate defendants' evidence that they did not intercept, disclose or use any wiretapped communication. Thus there was

no genuine issue as to the only material fact involved in the section 2520 claim, and the matter was ripe for summary judgment.

530 F.2d at 659–60.

Counsel for plaintiff responds in brief (pp. 2–3) to defendants' reliance on *Broadway:*

From an evidentiary perspective, Defendants' singular reliance on *Broadway v. City of Montgomery, Alabama,* 530 F.2d 657 (5th Cir.1976) is misplaced. This case offers little support for the assertion Defendants are making at this point. Unlike the present factual record, *Broadway* involved a situation of "double hearsay." As noted by the Fifth Circuit the materials submitted in opposition to summary judgment by plaintiffs included—

"the testimony from the hearing on the motion to suppress of David W. Crosland, former District Attorney in charge of the criminal prosecutions against [the plaintiff]. Crosland testified that three days after the wiretap was found [Defendant 1] told him that [Defendant 2] told [Defendant 1] that 'They had tapped [plaintiff's] telephone.'"

*Id.* at 661.

The factual record in this case differs considerably from *Broadway.* This case includes not only eyewitness testimony concerning the installation, testing and use of the listening device but also the admissions of the Defendants. The later evidence is quite damning in rejecting the plea of innocence being claimed by the Defendants. This testimony is not subject to the same problem occurring in *Broadway* since it falls directly within the non-hearsay provision of Rule 801. See *United States v. Slone,* 833 F.2d 595 (6th Cir.1987); *United States v. Miller,* 725 F.2d 462 (8th Cir.1984).

The factual record disclosed not only the reason for the listening device but also how it was set up, operated and used to overhear Plaintiff's conversations.

With all due deference to able and earnest counsel for plaintiff, the Court notes that the *Broadway* court had already disposed of plaintiff's claim under 18 U.S.C. § 2520 by concluding and writing that the district court had properly granted defendants' motion for summary judgment on that claim *before* it turned to a consideration of *"Plaintiff's 'civil rights' claim"* under which the language quoted in plaintiff's brief about David W. Crosland's testimony appeared [530 F.2d at pp. 660–61]. In any event *Broadway* is without question binding precedent in the Eleventh Circuit[4] for the proposition that a summary judgment affidavit containing nothing more than a recital of unsupported allegations, conclusory in nature, is insufficient to avoid summary judgment and for the further proposition that in order to prevail under 18 U.S.C. § 2520 the plaintiff must show that the oral communications were in fact intercepted, disclosed or used by the defendant and that this cannot be established by hearsay testimony, either double or single.

Counsel for plaintiff cites *Watkins v. L.M. Berry & Co.,* 704 F.2d 577 (11th Cir. 1983) (reversing summary judgment by an Alabama district court), as supportive of his argument in brief that summary judgment in favor of the defendant postal supervisors is inappropriate in this case. This Court disagrees with counsel's assessment and applicability of the *Watkins* case and its holding. In that case the Eleventh Circuit held that material fact issues existed as to the scope of the monitoring policy to which the plaintiff employee consented and as to whether the employer [through another employee] listened to the plaintiff's telephone call beyond what was necessary to determine that the call was personal, precluding summary judgment for the employer. Actually, *Watkins* involved the applicability or inapplicability of the consent exemption set out in 18 U.S.C. § 2511(2)(d) and of the business extension exception from liability for intercepting wire or oral

4. The Eleventh Circuit, in the en banc decision *Bonner v. City of Prichard,* 661 F.2d 1206, 1209 (11th Cir.1981), adopted as precedent decisions of the former Fifth Circuit rendered prior to October 1, 1981.

communications. 18 U.S.C. § 2510(5)(a)(i). Moreover, *Watkins* also presented the issue whether the contents of a personal telephone call can ever be monitored in the ordinary course of business. None of the issues above described are involved or presented in the instant case.

[Unlawful Interception of Oral Communications]

The reasonable expectation of privacy requirement discussed above is equally applicable to the alleged violation(s) by defendants of 18 U.S.C. § 2510, *et seq.* The essential elements of the offense are: [1] a willful interception of an oral communication by a device by the defendant; [2] the communication must have been uttered by a person who exhibited an expectation that it would not be intercepted; and [3] the communication must have been uttered under circumstances that justified the expectation. *Kemp v. Block,* 607 F.Supp. 1262, 1264 (D.Nevada 1985).

[Analysis of Evidence Submitted In Opposition To Summary Judgment]

While able counsel for plaintiff has faithfully and diligently pursued all discovery avenues in his quest for evidence supporting plaintiff's claims for relief in this civil action, the evidence which he offers therefrom by way of depositions submitted in opposition to summary judgment weighs more in quantity than it is worth in quality. A careful review, analysis and evaluation of the depositions of Hollis, Gray, Nale, Childers, Gamble, Hovater and Nelson [ante, pp. 1470–71, inclusive] leads to a reasoned conclusion [reached by the Court] that these postal service employees have no first-hand knowledge of actual facts supportive of plaintiff's claims for relief herein asserted *and in fact do not purport to have.* Reiterating, see ante pp. 1470–71, the depositions of these parties are replete with hearsay, speculation and conjecture. Moreover, that portion of the deposition of defendant Robinson relied upon in brief (at pp. 1471–72) by counsel of record for plaintiff [Robinson depo. p. 14, lines 21–25 and

p. 15, lines 1–9] simply does not support the theory of plaintiff's counsel espoused in brief.

[Eleventh Circuit and former Fifth Circuit Title III cases]

While not cited in brief by either counsel, the Eleventh Circuit Court of Appeals has decided at least two separate cases involving civil actions by persons asserting monetary claims for relief against alleged interceptors under the provisions of 18 U.S.C. §§ 2510–2520. One such case is *Epps v. St. Mary's Hospital of Athens, Inc.,* 802 F.2d 412 (11th Cir.1986) (per Senior U.S. Circuit Judge Tuttle); the other is *Scutieri v. Paige,* 808 F.2d 785 (11th Cir.1987) (per Judge Garza, Senior U.S. Circuit Judge for the Fifth Circuit, sitting by designation).

In *Epps* certain individuals whose telephone conversation was interrupted brought action against the interceptor and others[5] seeking actual and punitive damages under the federal wiretapping statute, 18 U.S.C. §§ 2510–2520. The district judge granted summary judgment in favor of the interceptor and other defendants. The individuals whose conversations was intercepted appealed. The Court of Appeals affirmed the district court holding that the interception fell within the telephone extension exception to civil liability for interception of wire or oral communications, 18 U.S.C. § 2510(4, 5).

Although *Epps* is binding precedent in the Eleventh Circuit on the 18 U.S.C. §§ 2510–2520 issues raised and decided therein, none of those issues are presented in the case now before the Court.

In *Scutieri v. Paige* the managers of a life care facility for the elderly brought a civil wiretapping action against the director of security and maintenance at the facility, the owner of a burglar alarm company and the facility bookkeeper based on the installation of bugging devices in the managers's apartment which allowed the interception of private conversations and telephone calls. The complaint asserted violations of two federal wiretapping statutes, 18 U.S.C. § 2520 and 47 U.S.C. § 605, a Florida wire-

---

**5.** The others are alleged to have listened to and disclosed or used the contents of the recorded interception.

tapping statute, a claim under 42 U.S.C. § 1983 and claims for invasion of privacy and intentional infliction of emotional distress.

The district court granted a directed verdict in *Scutieri* in favor of the defendant owner of the burglar alarm company and the facility bookkeeper. The jury returned a general verdict in favor of the plaintiff managers against the defendant director of the facility and a verdict against all defendants on their counterclaims for abuse of process. The district court denied all post-trial motions. The defendant director of the facility and the plaintiff managers both appealed. The Court of Appeals held that: [1] substantial evidence existed upon which reasonable persons could have found the defendant owner of the burglar alarm company liable for electronic interception: [2] it was an abuse of discretion to fail to submit to the jury the plaintiff managers' claim for punitive damages; [3] it was not an abuse of discretion to deny the defendant director's motion for new trial based on alleged newly discovered evidence that the plaintiff managers' audio frequency countermeasure technician witness was fake; and [4] it was not an abuse of discretion to deny the plaintiff managers' motion for new trial based upon newly discovered evidence that indicated involvement in the wiretapping by the defendant owner of the burglar alarm company, where plaintiff managers admitted that they were aware of this evidence before trial. The case was reversed in part, affirmed in part and remanded.

While *Scutieri* clearly recognizes: [1] that circumstantial evidence can legally implicate an alleged interceptor in a surreptitious network of unlawful eavesdropping; [2] that the success of a wiretap ultimately depends upon secrecy and concealment, citing *Awbrey v. Great Atl. & Pac. Tea Co.*, 505 F.Supp. 604, 607 (N.D.Ga.1980); and [3] that the law of civil conspiracy and evidence of covert behavior can aid in the presentation of evidence to a point that it will be deemed substantial evidence that individuals other than the actual interceptor may have been involved in the unlawful invasion of the plaintiff managers' privacy,

this Court can only conclude, as it does, that *Scutieri* is no help to the efforts of Jessie Walker to escape summary judgment.

Finally, the teaching of the former Fifth Circuit Court of Appeals in *Briggs v. American Air Filter Co., Inc.*, 630 F.2d 414 (5th Cir.1980), is that the act of listening-in does not always satisfy the statutory definition of an interception and, if it does not, the act of listening-in is not proscribed by Title III of the Omnibus Crime Control and Safe Streets Act of 1968, 18 U.S.C. §§ 2510–2520 ("Title III"). That case also interpreted the "telephone exception" contained in title III and in particular decided whether defendant appellee William F. McClure, Jr., used a telephone "in the ordinary course of ... business" when he used it to listen to a conversation between plaintiffs appellants Phillip Briggs and Dan C. Roby and recorded part of it, holding that he did and affirming the action of the district court in granting summary judgment in favor of defendants. The recording was done with an attachment to a portable dictating machine.

As noted in this former Fifth Circuit opinion, 630 F.2d at pp. 416–17, many of the terms used in 18 U.S.C. § 2520 are defined in preceding section 2510. *Briggs* reiterated a well settled rule that a telephone conversation is a wire communication. N. 4, 630 F.2d at p. 417, of this decision noted that *wire communications*, unlike *oral communications*, are protected against interception by electronic, mechanical, and other devices *regardless of the speaker's expectation of privacy* [inviting comparison of 18 U.S.C. § 2510(1) with 18 U.S.C. § 2510(2) ].

The following language of the *Briggs* court, amplifies the sketch of its holding previously given:

> We decide only that when an employee's supervisor has particular suspicions about confidential information being disclosed to a business competitor, has warned the employee not to disclose such information, has reason to believe that the employee is continuing to disclose the

information, and knows that a particular phone call is with an agent of the competitor, it is within the ordinary course of business to listen in on an extension phone for at least so long as the call involves the type of information he fears is being disclosed.

630 F.2d at 420.

Given the complaint of Jessie Walker in the above entitled civil action which contains few alleged facts but broad, conclusionary allegations and given the scant [admissible] facts with which Walker has come forward in this summary judgment proceeding seeking to meet his *Celotex* burden, the Court is ill equipped to say and does not say here that *Briggs* is apposite to this *Walker* case. It is, however, cited in this Memorandum of Decision for the purpose of emphasizing that interpretation of Title III is difficult, as pointed out in the *Briggs* majority decision, and to illustrate that Title III law requires different approaches by the courts in the decision making process in Title III cases greatly dependent on the actual facts involved. Since this Court has not been made privy to the actual facts involved in Walker's case, its ruling is made on the absence of facts.

### [CONCLUSION]

Since it is clear and certain that plaintiff Jessie Walker has failed to make a showing in this summary judgment proceeding sufficient to establish the existence of the elements essential to his case and on which he would bear the burden of proof at trial, summary judgment in favor of defendants is required with respect to all claims for relief herein asserted by plaintiff against the movant defendants. An appropriate order will be entered.

### SUMMARY JUDGMENT ORDER

In conformity with Memorandum of Decision entered this date in the above entitled civil action, it is

ORDERED, ADJUDGED and DECREED that defendants' motion for summary judgment in their favor with respect to the federal and state claims for relief herein asserted by plaintiff against mov-ant-defendants in the above entitled civil action is hereby GRANTED and ENTERED, the Court having found and determined and hereby finding and determining that there is no genuine issue of material fact with respect to plaintiff's asserted federal and state claims for relief against movant-defendants, that defendants are [each] entitled to judgment in their favor with respect to each such claim for relief above referenced and that there is no just cause or reason for delay in entry of final judgment in this case in favor of defendants and against plaintiff with respect to each claim for relief asserted in plaintiff's complaint.

The Court DIRECTS entry of final judgment in the above entitled action in favor of defendants and against plaintiff, with costs taxed against plaintiff, by separate order pursuant to Rule 58, Fed.R.Civ.P.

DONE and ORDERED.

### RULE 58 FINAL JUDGMENT

In conformity with Summary Judgment Order entered in the above entitled civil action this date, it is

ORDERED, ADJUDGED and DECREED that final judgment in the above entitled civil action in favor of defendants Thomas E. Darby, Hugh L. Robinson, Jr. and Kenneth Day and against plaintiff Jessie Walker is hereby RENDERED and ENTERED and that the above entitled civil action is hereby DISMISSED with prejudice.

Costs are taxed against the plaintiff Jessie Walker, for which let execution issue.

DONE and ORDERED.